[L.A. No. 30624. Aug. 31, 1977.]

ACHILLES P. ANTON, Plaintiff and Appellant, v.
SAN ANTONIO COMMUNITY HOSPITAL,
Defendant and Respondent;
BOARD OF TRUSTEES OF SAN ANTONIO COMMUNITY
HOSPITAL, Real Party in Interest and Respondent.

806

**COUNSEL**

Arthur J. Jaffee for Plaintiff and Appellant.

Musick, Peeler & Garrett and Joseph A. Saunders for Defendant and Respondent and for Real Party in Interest and Respondent.

Hanson, Bridgett, Marcus, Milne & Vlahos, Ross E. Stromberg, Laurence W. Kessenick and Craig J. Cannizzo as Amici Curiae on behalf of Defendant and Respondent and Real Party in Interest and Respondent.

**OPINION**

**SULLIVAN, J.**[*]—Plaintiff Achilles P. Anton, a licensed physician and surgeon, appeals from a judgment denying his petition for a writ of mandate sought under Code of Civil Procedure section 1085 to compel defendant San Antonio Community Hospital, a private, nonprofit hospital corporation, to reinstate his hospital rights and privileges and reappoint him to the medical staff.

The cause was submitted on an agreed statement of facts, which on stipulation of the parties was to be treated as defendant's answer to the petition. The underlying facts, as they appeared in the agreed statement, were in substance as follows:

---

[*]Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

For 13 years preceding the events here in question plaintiff had been a member of defendant hospital's medical staff—an unincorporated association organized under the auspices of the hospital's board of directors as required by section 2392.5 of the Business and Professions Code.[1] During that period, however, he had been the subject of several corrective and/or disciplinary actions taken by committees of the medical staff relative to his failure to complete hospital medical records.

In October 1973 the medical staff commenced an investigation of plaintiff's hospital medical practices. A committee report made in the same month indicated, inter alia, that "there is evidence of poor medical judgment and overutilization of the hospital. Many of these patients did not appear to need actual hospital care, multiple tests were performed without medical indication, and there were several questionable industrial cases." The matter was referred to a second committee which reported, following a review of eight consecutive admissions by plaintiff Anton, that the charts reviewed were "found to be lacking in several areas, both in regard to over and underutilization as well as continued lack of completeness of histories and physicals . . . ." It was recommended that appropriate action be taken in accordance with medical staff bylaws.

In December 1973 the hospital's board of directors, having been advised of the foregoing recommendation, met for the purpose of reappointing staff members for the year 1974. After some discussion it was determined that all staff members with the exception of plaintiff should be reappointed and that action on plaintiff's reappointment should be tabled until the January meeting of the board.

In January 1974, at a special joint meeting of the executive and credentials committees of the medical staff, it was resolved that plaintiff's hospital privileges should be summarily suspended "on the basis of his failure to document proper care of his patients by failure to

---

[1]Section 2392.5 states in substance that it constitutes unprofessional conduct for a physician to practice in a hospital having five or more physicians which does not have rules established by the board of directors which include: "(a) Provision for the organization of physicians and surgeons . . . permitted to practice in the hospital into a formal medical staff with appropriate officers and bylaws and with staff appointments on an annual or biennial basis. (b) Provision that membership on the medical staff shall be restricted to . . . practitioners competent in their respective fields, worthy in character and in professional ethics . . . . (c) Provision that the medical staff shall be self-governing with respect to the professional work performed in the hospital . . . . (d) Provision that adequate and accurate medical records be prepared and maintained for all patients."

complete the histories and physical examinations in accordance with the Rules and Regulations of the Medical Staff Bylaws. Dr. Anton to be notified by certified mail of his suspension and informed that he may request a preliminary hearing before this committee in accordance with Article III, section 8, of the Medical Staff Bylaws."[2] The indicated notification was sent, and a preliminary hearing was requested and held, resulting in the upholding of the suspension of hospital privileges.

In February 1974 plaintiff requested a formal hearing on the matter of his suspension (see fn. 2, *ante*), and by letter dated February 11 he was notified that a judicial review committee had been appointed in accordance with the bylaws "to meet with you on March 5 to consider your non-reappointment to the medical staff[3] and the recommendation of the Executive and Credentials Committees regarding suspension of all hospital privileges." The letter went on to state: "The charges on which the recommendation for suspension was based include failure to demonstrate a continued satisfactory level of professional care and judgment as follows:

"(1) Your lack of cooperation and repeated violations of the Rules and Regulations of the Medical Staff Bylaws relative to the completion of histories and physical examinations within the required period, as evidenced by the following records: [Citation by number of 54 hospital records.]

"(2) Repeated violations of the Rules and Regulations of the Medical Staff Bylaws relative to the completion of hospital records in general, as evidenced by the following records: [Citation by number of 14 hospital records.]

---

[2]The indicated section of the medical staff's 1968 bylaws provided: "Summary Suspension: In any case where the President of the Staff or the Chief of any Department shall have determined that there exists probable cause for taking immediate action to protect the welfare of a member's patient(s), such a member may be summarily suspended for so long as is necessary to protect patient welfare. The suspended member may then request an immediate preliminary hearing before the Advisory Committee at which time it shall be determined whether or not the suspension should be removed pending a hearing as requested by Section 6 [providing for the appointment of a judicial review committee for purposes of formal hearing]."

[3]Some time after February 11 it was apparently brought to the attention of appropriate staff committees that the matter of plaintiff's reappointment remained tabled before the hospital board of directors. Meetings of the credentials and executive committees were held, and on February 25 the latter committee forwarded to the board its recommendation that plaintiff not be reappointed. On the same day the board at its regular meeting accepted the recommendation, providing in its resolution that its action was "retroactive to January 1, 1974."

"(3) Failure to visit hospitalized patients on a timely basis, as evidenced by the following records: [Citation by number of four hospital records.]

"(4) Over utilization of hospital facilities and services, as evidenced by the following records: [Citation by number of 10 hospital records.]"

At its regular meeting of February 25, 1974, (see fn. 3, *ante*)—which occurred subsequent to plaintiff's receipt of the above letter—the hospital board of directors approved a revised set of medical staff bylaws,[4] which differed in several respects from the theretofore existing (1968) bylaws and, according to the agreed statement of facts,[5] were based upon a document entitled "Guidelines for the Formulation of Medical Staff Bylaws, Rules and Regulations," published in 1971 by the Joint Commission on Accreditation of Hospitals, the national organization by which the hospital was accredited.

On March 5, 1974, the formal hearing was commenced before the judicial review committee, which had been appointed by the executive committee and consisted of five members and two alternates, all of whom were members of the medical staff. A court reporter was present and transcribed all proceedings. An attorney appointed for the purpose by the board of directors presided over the hearing as hearing officer, but neither plaintiff nor the medical staff was represented by counsel; plaintiff was assisted in the proceedings by a member of the medical staff and the staff itself was represented by two other members. The hearing was conducted under the revised bylaws over plaintiff's objection. At its conclusion the judicial review committee, after deliberating in the presence of the hearing officer and the two alternates, recommended to the medical staff and board of directors that plaintiff's hospital privileges be suspended and that he not be reappointed to the medical staff. In its formal report and recommendation the committee cited as reasons for its decision the four charges which had been set forth in the letter of February 11, finding each of the charges to be true.

---

[4]These revised bylaws had previously been proposed for approval and approved by the medical staff at its February 11 meeting, at which plaintiff was in attendance but was not permitted to vote.

[5]Our examination of the 1974 bylaws, excerpts of which have been ordered to be lodged in this court, reveals that the portion thereof dealing with hearing and appeal procedures is based not on the 1971 Guidelines of the Joint Commission on Accreditation of Hospitals (JCAH) but on the 1974 Uniform Code of Hearing and Appeal Procedures of the California Medical Association (CMA) and California Hospital Association (CHA). Further reference to both the 1971 JCAH Guidelines and the CMA/CHA Uniform Code will be made below.

On March 25, 1974, plaintiff made a written request for an appellate review of the judicial review committee decision as authorized by the 1968 medical staff bylaws. He was thereupon notified by letter that on April 24 an appellate review hearing would take place before the board of directors, as authorized by the revised (1974) bylaws.

On the appointed date plaintiff appeared with his attorney at the hearing. Also present were the members of the board of directors and their attorney. No one appeared on behalf of the medical staff or any of its committees. After introducing himself plaintiff's counsel stated that plaintiff would answer any questions that the board would care to put to him, but the attorney for the board pointed out that under the revised bylaws it was incumbent upon plaintiff to show either that the procedures required by the bylaws had not been complied with or that the decision of the judicial review committee was not supported by substantial evidence.[6] Thereupon plaintiff's attorney orally advanced five alleged errors and improprieties in the previous proceedings: (1) that the judicial review committee hearing was improperly conducted under the 1974 bylaws and should have been conducted under the 1968 bylaws; (2) that the disciplinary action taken was unduly harsh; (3) that none of the allegations made at the hearing were valid except that which related to the failure to complete history and physical examination records in a timely manner; (4) that the judicial review committee had erroneously refused to review selected medical records which he had brought to the hearing from his own office; and (5) that plaintiff was never able to present an adequate defense. Counsel concluded by stating that the committee hearing had contained other flaws as well, but that he would not undertake to enumerate them at that time. To this the board's attorney responded that counsel should call the attention of the board to each alleged prejudicial impropriety in order that plaintiff might claim exhaustion of his intraorganizational remedies should he subsequently wish to do so. Counsel, however, again declined to further enumerate the claimed errors or to become more specific regarding alleged prejudice, stating that the hearing in progress was not the appropriate forum for so doing. Plaintiff and his counsel were thereupon excused from the hearing.

On May 13, 1974, the board of directors, after reconvening to continue their deliberations, resolved to "sustain the decision of the Judicial

---

[6]The "grounds for appeal" prescribed by the revised (1974) bylaws were: "(a) substantial failure of the Judicial Review Committee, Executive Committee, or Board of Trustees to comply with the procedures required by this Article or by the hospital Medical Staff Bylaws in the conduct of hearings and decisions upon hearings so as to deny due process and a fair hearing; (b) that the decision of the Judicial Review Committee was not supported by substantial evidence."

Review Committee in regard to the medical staff membership of Dr. Anton." Plaintiff was notified of the decision, and this action in mandate followed.

Following argument by the parties at the hearing on the order to show cause, the trial court issued a notice of intended decision in which it determined, inter alia: (1) that plaintiff was not entitled to a trial de novo before the court but only to a judicial review of the administrative record; (2) that the substantial evidence test rather than the independent judgment test was to be applied in evaluating the decision of the board; (3) that all charges found to be true by the judicial review committee were supported by substantial evidence in the record except the second charge, i.e., that dealing with the failure to complete "hospital records in general"; and (4) that plaintiff was accorded "minimal due process of law," as required by applicable decisions. Findings of fact and conclusions of law detailing these determinations were filed, and judgment was entered denying the writ.

I

■ We first confront the question of the proper rule of judicial review in this matter. The trial court, plaintiff contends, was in error when, in reviewing the administrative record, it refused to exercise its independent judgment on the evidence and instead limited itself to a determination of whether the decision of the board was supported by substantial evidence in light of the whole record. In so doing, it is urged, the trial court improperly ignored the principle announced by this court in *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], and *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]. For reasons to appear below, we conclude that plaintiff is correct.

At the outset of our discussion of this issue we offer several observations relative to the procedural posture of this case.

■ As indicated above, the instant proceeding was brought, according to the express terms of the complaint, pursuant to the provisions of section 1085 of the Code of Civil Procedure, dealing with so-called "traditional mandate." The trial court, however, perceiving that the matter before it involved the review of an administrative decision based upon a full administrative record, chose to treat the proceeding essentially[7] as though it had been brought pursuant to the provisions of

---

[7]Although as indicated above the cause was submitted on an agreed statement of facts and supporting exhibits, it appears that the transcripts of the hearings before the judicial review committee were also considered by the trial court prior to its ruling.

section 1094.5 of the same code, dealing with so-called "administrative mandate." For reasons to appear below we have concluded that this was proper; in short, the matter could have and should have been brought as a section 1094.5 proceeding, and the trial court was correct in so treating it.[8]

While the Legislature, in its 1945 enactment of section 1094.5 of the Code of Civil Procedure, did not thereby bring into being "a separate and distinctive legal personality . . . removed from the general law of mandamus . . ." (*Grant* v. *Board of Medical Examiners* (1965) 232 Cal.App.2d 820, 826 [43 Cal.Rptr. 270]), it did establish a specialized procedure for the review by mandate of certain types of administrative decisions, whose characteristics it specifically delineated in the statute. That procedure, the Legislature provided, was to be used in all cases "[w]here *the writ* [i.e., the writ of mandate] is issued for the purpose of inquiring into the validity of *any* final administrative order or decision made as the result of a proceeding in which *by law* [1] a hearing is required to be given, [2] evidence is required to be taken and [3] discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ." (Code Civ. Proc., § 1094.5, subd. (a); *italics* added.) Thus, by the very terms of the statute, the procedure there set forth is to be utilized in all cases in which review of a final adjudicatory order[9] is sought by mandate[10] and the three indicated elements are present.[11]

---

[8]Defendant expressed its agreement with this conclusion at oral argument. We nevertheless set forth our reasons at some length for the guidance of the bench and bar in other cases of this nature.

[9]Section 1094.5 review is available only with respect to adjudicatory, as opposed to legislative, administrative actions. "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky, supra,* at p. 35, fn. 2; see also *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 706 [129 Cal.Rptr. 417]; *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 279-281 [63 Cal.Rptr. 889].)

[10]Not all adjudicatory determinations of administrative agencies are subject to review by mandate. The decisions of certain agencies are reviewable only in accordance with special review procedures applicable to the particular agency. (See Bus. & Prof. Code. §§ 23090-23090.7 [Alcoholic Beverage Control Appeals Board]; Lab. Code, §§ 5950-5956 [Workers Compensation Appeals Board]; Pub. Util. Code, §§ 1756-1767 [Public Utilities Commission]; Bus. & Prof. Code, §§ 6082-6084 [State Bar].) Judicial review of tax decisions, of course, is normally obtained by means of a civil suit following the payment of taxes under protest. (Rev. & Tax. Code, § 5103 et seq.)

[11]There are, of course, many situations in which the subject elements are not necessary to a valid administrative order or decision. (See, e.g., *Eye Dog Foundation* v. *State Board*

It is manifest that all of the stated conditions for section 1094.5 review are present in the instant case. The decision in question is clearly final and is adjudicatory rather than legislative in character. Moreover, the elements of hearing, evidence, and discretion in the determination of facts are clearly required by law in cases such as that before us. Our decision in *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253], referring to a long and well-established line of cases of similar purport, made it clear that a physician may neither be refused admission to, nor expelled from, the staff of a hospital, *whether public or private,* in the absence of a procedure comporting with the minimum common law requirements of procedural due process and including each of the elements which here concern us. (See especially 12 Cal.3d, pp. 549-554, and fn. 12 on the latter page.) These principles were made the subject of an explicit holding in *Ascherman* v. *Saint Francis Memorial Hosp.* (1975) 45 Cal.App.3d 507 [119 Cal.Rptr. 507], dealing with admission to the staff of a *private* hospital.[12] It is therefore clear that the case before us fulfills all of the statutory requirements for review under the procedure established by section 1094.5.

It has been widely assumed that mandate review via section 1094.5 is available only with respect to administrative decisions by *governmental*

---

*of Guide Dogs for the Blind* (1967) 67 Cal.2d 536 [63 Cal.Rptr. 21, 432 P.2d 717] (automatic suspension of guide dog school license if no trainer in charge); *DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255 [288 P.2d 862] (suspension of teaching credential on conviction of specified crimes); *Patton* v. *Board of Harbor Commissioners* (1970) 13 Cal.App.3d 536 [91 Cal.Rptr. 832] (civil service employee not entitled to hearing if suspension of five days or less).) In such cases review of the order or decision by means of section 1094.5 is not available, and review is normally obtained by means of section 1085 mandate or an action for declaratory relief.

[12]In concluding that there should be no essential difference between public and private hospitals with respect to the scope of protections available at the administrative level to a physician seeking to become or remain a member of the medical staff, the *Ascherman* court relied significantly on its previous decision in *Ascherman* v. *San Francisco Medical Society* (1974) 39 Cal.App.3d 623 [114 Cal.Rptr. 681]. The latter case, after an exhaustive discussion of the development and history of separate rules in this area for private and public hospitals—which discussion we need not here reiterate—went on to hold as follows: "The unmistakable trend of the judicial decisions and legislative enactments in this state supports the principle that a private hospital may not deprive a physician of staff privileges without granting him minimal due process of law protection. This protection should be that recognized in *Silver* v. *Castle Memorial Hospital* [(1972) 53 Hawaii 475 (497 P.2d 564)]. There the court, after noting the respective interests of the doctor, the hospital, and the public, concluded: '. . . due process, in this context, requires that a fair and thorough consideration be made of a doctor's application for initial appointment or reappointment to the staff. Therefore, a hearing before the deciding board must be provided. It is not possible that such a hearing require all the aspects of a formal judicial

agencies. However, we find nothing in the statutory language or supporting legislative materials which would lead us to accept that assumption as warranted. Section 1094.5, as we have pointed out above, is by its terms made applicable to *"any final administrative order or decision* made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the *inferior tribunal, corporation, board or officer* . . . ."* Clearly this language is not limited, on its face at least, to governmental as opposed to nongovernmental agencies. Moreover, the last-italicized language appears to have been drawn directly from the terms of section 1085, dealing with so-called "traditional mandate."[13] It has long been clear, of course, that section 1085 mandate is available not only to compel official acts on the part of governmental agencies[14] *but also* to compel nongovernmental bodies or officers to

---

or quasi judicial hearing. . . . The doctor should be on notice that a hearing is available to him. He should be given timely notification sufficiently prior to the hearing for him to adequately prepare a defense. In conjunction with such notice, a doctor whose privileges are being revoked or who is being denied reappointment should be provided a written statement of the charges against him. Such statement should be sufficiently adequate to apprise him of the specific charges against him. A doctor who is being denied initial appointment to a hospital staff should be provided a written statement specifying the reasons his application is being denied. [¶] Because a hospital board has no subpoena power, there can be no right to confront and cross-examine persons who have made adverse statements of a doctor unless such persons testify at the hearing. However, a doctor should have the right to call his own witnesses. [¶] It should be within the discretion of the hospital board as to whether counsel may attend the hearing and participate in the proceedings. Participation of counsel would probably not be necessary unless the hospital's attorney is used in the proceedings or the extreme nature of the charges involved indicated that representation by an attorney would be advantageous. Such a limitation would not preclude a doctor from consulting an attorney prior to the hearing even though the attorney was not allowed to participate in the hearing itself. [¶] The basis for the decision of the board must come from substantial evidence which was produced at the hearing. As such the board cannot rely on *ex parte* communications that were not made known to the doctor in question. The utilization of such material would render ineffective the doctor's right to answer the charges upon which the denial of his staff privileges are based. [¶] The decision of the board should be written, including the basis for the decision, thus providing a record for judicial review.' (53 Hawaii at pp. 484-485 [497 P.2d at pp. 571-572].)" (39 Cal.App.3d at pp. 648-649.)

[13]Section 1085 now provides, and has provided as here relevant since its enactment in 1872, that the writ of mandate "may be issued by any court, except a municipal or justice court, to any *inferior tribunal, corporation, board, or person,* to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such *inferior tribunal, corporation, board or person."* We are not persuaded that the Legislature, in substituting the word "officer" for the word "person" in its 1949 enactment of section 1094.5, thereby intended to indicate that the new procedure was designed to be limited in its application to the decisions of governmental bodies.

[14]Among the governmental agencies whose administrative decisions have in the past been subjected to review by means of section 1085 mandate are, of course, the governing

perform their legal duties.[15] It would seem to follow, therefore, that section 1094.5, by using substantially identical language in describing the kind of administrative body whose decisions are subject to review under its provisions, was intended to apply to the same spectrum of agencies to which section 1085 has been held applicable *in all cases in which the subject decision is the product of a proceeding in which a hearing and related procedural protections are required by law.* This, as we have pointed out above, is just such a case.

In reaching this conclusion we are of course aware of the report of the Judicial Council which led to the passage of section 1094.5 (Judicial Council of Cal., 10th Biennial Rep. (1944)) (hereinafter cited Report), as we are cognizant of the well-considered principle, announced with reference to this very statute in the case of *Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, at page 397 [184 P.2d 323], that "[i]n the absence of compelling language in the statute to the contrary, it will be assumed that the Legislature adopted the proposed legislation with the intent and meaning expressed by the council in its report." Although the report in

---

boards of *public* hospital districts organized under the provisions of the Local Hospital District Law (Health & Saf. Code, § 32000 et seq.). (See *Rosner* v. *Eden Township Hospital Dist.* (1962) 58 Cal.2d 592 [25 Cal.Rptr. 551, 375 P.2d 431] (compelling admission to medical staff); *Martino* v. *Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51 [43 Cal.Rptr. 255] (compelling district and its board of directors to consider application for admission to medical staff); *Rosner* v. *Peninsula Hospital Dist.* (1964) 224 Cal.App.2d 115 [36 Cal.Rptr. 332] (same); *Wyatt* v. *Tahoe Forest Hospital Dist.* (1959) 174 Cal.App.2d 709 [345 P.2d 93] (same).)

[15]Most of the cases of this kind have involved the officers of business corporations (see, e.g., *Hobbs* v. *Tom Reed Gold Min. Co.* (1913) 164 Cal. 497 [129 P. 781]; *Miller* v. *Imperial Water Co. No. 8* (1909) 156 Cal. 27 [103 P. 227]; *Johnson* v. *Langdon* (1902) 135 Cal. 624 [67 P. 1050]) and labor unions (see, e.g., *Thorman* v. *Intl. Alliance etc. Employees* (1958) 49 Cal.2d 629 [320 P.2d 494]; *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134 [231 P.2d 6, 21 A.L.R.2d 1387]; *Dotson* v. *Intl. Alliance etc. Employees* (1949) 34 Cal.2d 362 [210 P.2d 5]; *Otto* v. *Tailors' P. & B. Union* (1888) 75 Cal. 308 [17 P. 217]; *Lundquist* v. *Marine Engineers Beneficial Assn.* (1962) 208 Cal.App.2d 390 [25 Cal.Rptr. 250]; *Gonzales* v. *Internat. Assn. of Machinists* (1956) 142 Cal.App.2d 207 [298 P.2d 92]; *Hopson* v. *Nat. Union etc. Cooks, Stewards* (1953) 116 Cal.App.2d 320 [253 P.2d 733]). The writ has also been employed in the context of unincorporated associations, such as social and fraternal societies (see *Taboada* v. *Sociedad Espanola etc.* (1923) 191 Cal. 187 [215 P. 673, 27 A.L.R. 1508]; *Levy* v. *Magnolia Lodge, I.O.O.F.* (1895) 110 Cal. 297 [42 P. 887]), and professional societies (*Smith* v. *Kern County Medical Assn.* (1942) 19 Cal.2d 263 [120 P. 874]; *Bernstein* v. *Alameda etc. Med. Assn.* (1956) 139 Cal.App.2d 241 [293 P.2d 862].) (See generally Annots., 20 A.L.R.2d 344-417, 421-522, 531-590.)

As our recent opinion in *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] makes clear, the principles of the above-cited cases are also applicable in cases involving private hospitals, where mandate is "the established avenue" for the review of administrative action. (See 17 Cal.3d at p. 484.) See also *Ascherman* v. *Saint Francis Memorial Hosp., supra,* 45 Cal.App.3d 507.)

question concerns itself exclusively with the review of governmental agency decisions, it also contains general language such as the following: "*Without affecting the historic uses of the writ* it is suggested that, by the addition of a new section to the statute, the Legislature could prescribe the details of procedure where the writ is used for reviewing the adjudicatory decisions of administrative bodies." (Report, at p. 27; italics added.) Also, in describing the scope of its survey the council admitted that it had confined its study to the area of *state* agencies "engaged in licensing and disciplining the members of the various professions and occupations." (Report, at p. 10.) Recognizing this limitation, however, the council nevertheless offered the proposed statute couched in the broad terms to which we have had reference, stating: "The proposed legislation is designed to provide a solution for many of the difficulties and injustices arising in the administrative licensing and disciplining of private citizens. The theories underlying the Council's proposals in this limited field are susceptible, of course, of adaptation to other kinds of administrative action. . . ." (Report, at p. 10.)

Finally, we point out a compelling practical consideration which renders the use of section 1094.5 procedures particularly appropriate in cases of this kind. Section 32000 et seq. of the Health and Safety Code, the so-called Local District Hospital Law, makes specific provision for a hearing in matters of this nature which arise in the context of a *public* hospital operated by a hospital district (see especially §§ 32152, 32153), and the clear applicability of our decision in *Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d 541, insures that such a hearing will be accompanied by the related procedural protections requisite to section 1094.5 review. It would be incongruous, we believe, to hold that the decisions of *private* hospital boards, which are required by the same decision to be based upon a hearing of substantially identical scope and purport, were to be subject to some different form of review.

This is especially so when it is considered that the rules under which such hearings are conducted, whether in public or private hospitals, are in substantially all cases quite similar in character and content. The Joint Commission on Accreditation of Hospitals (JCAH), in its capacity as the national body responsible for the accreditation of all hospital facilities, periodically issues both standards of accreditation and guidelines designed to facilitate compliance with those standards in order to assure accreditation. One area in which such standards and guidelines are

issued is that of medical staff appointment, reappointment, and discipline, and the hearing and appeal procedures to be followed in such matters. Thus, for example, in its 1970 Accreditation Manual—of which we take judicial notice (Evid. Code, § 452, subd. (h))—the JCAH provided, under the heading of "Interpretation" of its standard VII,[16] that "[t]he bylaws, rules and regulations [of accredited hospitals] shall at least: . . . Provide an appeal mechanism relative to medical staff recommendations for denial of staff appointments and reappointments, as well as for denial, curtailment, suspension, or revocation of clinical privileges. This mechanism shall provide for review of decisions, including the right to be heard at each step of the process when requested by the practitioner. The final decision must be rendered by the governing body, within a fixed period of time." (JCAH, Accreditation Manual for Hospitals, *supra,* Medical Staff, p. 11.) Its 1971 guidelines —of which we also take judicial notice—are in the form of model bylaws in compliance with this interpretation; there the JCAH sets forth a comprehensive code of hearing and appellate review procedures, with provisions detailing the requirements of notice, request for hearing, composition of the hearing committee, conduct of the hearing (including the preparation of an accurate record of the proceedings), and appeal to the governing body. (JCAH, Guidelines for the Formulation of Medical Staff Bylaws, Rules and Regulations (1971) pp. 21-30.)

A more recent formulation of model bylaws dealing specifically with hearing and appeal procedures, of which we also take judicial notice, was adopted and approved by the California Medical Association (CMA) and California Hospital Association (CHA) in 1971.[17] This formulation, known as the Uniform Code of Hearing and Appeal Procedures, appears in the CMA pamphlet entitled Guiding Principles for Physician-Hospital Relationships; it is widely used in this state as a basis for bylaws on this subject in both public and private hospitals. As indicated above (see fn. 5, *ante),* defendant's 1974 bylaws, pursuant to which the proceedings below were conducted, were based upon the CMA-CHA Uniform Code insofar as they concerned hearing and appeal procedures.

---

[16]Standard VII provides: "The medical staff shall develop and adopt bylaws, rules and regulations to establish a framework for self-government and a means of accountability to the governing body." (JCAH, Accreditation Manual for Hospitals (1970) Medical Staff, p. 10.)

[17]The CMA-CHA Uniform Code, according to its introduction, was prepared in response to "significant decisions in the area of the right of a practitioner to due process when his medical staff privileges are under review. These decisions have created a need for more formal, detailed procedures in the area of the physician's right to a hearing and appeal."·(CMA, Guiding Principles for Physician-Hospital Relationships, p. 6.)

It is clear to us that the practical necessity of securing JCAH accreditation has the effect of insuring that substantially all hospitals in this state, whether public or private, have bylaws governing hearing and appellate procedures which are designed to comply with JCAH standards[18] and which, in most cases, are based either on the 1971 JCAH Guidelines or the more recent CMA-CHA Uniform Code of Hearing and Appeal Procedures. In these circumstances the use of the same judicial procedure for reviewing the adjudicatory decisions of all such hospitals is peculiarly appropriate.

For all of the foregoing reasons, then, we conclude that the trial court was correct in treating the instant proceeding as one for administrative review pursuant to the provisions of section 1094.5 of the Code of Civil Procedure.

## II

As we have pointed out above, however, it is plaintiff's contention that the trial court, although it properly treated the proceeding as one seeking 1094.5 review of an administrative decision, erroneously refused to exercise its independent judgment on the evidence. In so doing, it is urged, the court acted contrary to the principles laid down by us in our *Bixby* and *Strumsky* decisions.

The rule governing the scope of review to be applied in section 1094.5 proceedings when it is claimed that there has been an abuse of discretion because the findings are not supported by the evidence is set forth in subdivision (c) of the section as follows: "[I]n cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; . . . in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in light of the whole record." In our *Bixby* decision, applying this language in the context of a case involving a nonconstitutional state agency of statewide jurisdiction, we

---

[18]In the case of hospitals subject to the Local Hospital District Law (Health & Saf. Code, § 32000 et seq.) the obligation to comply with JCAH standards in this respect has the force of law. Section 32128 of that code requires that the rules of such a hospital shall include ". . . 2. Provision for procedure for appointment and reappointment of medical staff as provided by the standards of the Joint Committee [*sic*] on Accreditation of Hospitals; . . . ." The same section also provides: "Said rules of the hospital shall, insofar as consistent herewith, be in accord with and contain, minimum standards not less than the rules and standards of private or voluntary hospitals operating within the district."

held that the independent judgment test was to apply in all cases in which the subject decision substantially affected a fundamental vested right. In the subsequent *Strumsky* case we extended this rule of review[19] to the determinations of local governmental agencies and state agencies of local jurisdiction. The issue before us today, then, is whether the same rule of review should be applied as well to the determinations of nongovernmental agencies which are subject to review under section 1094.5. We hold that it should.

It is manifest, of course, that the decision of a private agency which affects a fundamental vested right may be as significant to the holder thereof as any decision by a public agency. It is urged, however, that the rule of review held appropriate in *Bixby* and *Strumsky* for governmental agencies lacking judicial powers under the Constitution cannot be appropriate in the case of a private agency because that rule is grounded in the doctrine of separation of powers—which doctrine, of course, can have no application in the case of administrative decision making by a private entity. This contention, however, manifests a fundamental misunderstanding of our prior decisions—a misunderstanding which we now hasten to correct.

As we made clear in *Bixby,* the basic consideration in determining the scope of judicial review to be afforded administrative decisions of an adjudicatory nature is *the importance of the affected right to the individual who stands in jeopardy of losing it.* Thus, we explained, "[i]f . . . the right has been acquired by the individual, and if the right is fundamental, the courts have held the loss of it is sufficiently vital to the individual to compel a full and independent review. The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction." (*Bixby, supra,* at p. 144.) We continued this basic approach in *Strumsky,* where, after reiterating the substance of *Bixby* in this respect, we said: "This reasoning, of course, applies with equal force to all administrative decisions of an adjudicatory nature—regardless of the administrative agency involved." (*Strumsky, supra,* at pp. 34-35, fn. omitted.) In *Bixby,* however, we had relied in our decision upon the

---

[19]Our full statement of the rule, as set forth in *Strumsky,* was as follows: "[I]f the order or decision of the agency substantially affects a fundamental vested right, the court, in determining under section 1094.5 of the Code of Civil Procedure whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in light of the whole record." (11 Cal.3d at pp. 44-45.)

separation-of-powers doctrine, holding in essence that that doctrine required careful *judicial* scrutiny of state administrative decisions affecting fundamental vested rights. (*Bixby, supra,* at pp. 141-144.) *Strumsky,* on the other hand, involved a local agency, to which the doctrine of separation of powers is not applicable. The question therefore arose whether this latter fact prevented the application of the rule developed in *Bixby.* We concluded that it did not. "[T]he fact that agencies below the state level are not *prevented* from exercising judicial powers by the separation-of-powers doctrine in no way implies in and of itself that they *may exercise* such powers. Because local bodies, like governmental entities on the state level, ultimately derive all their powers from the state Constitution, it is in that document that we must seek the basis for any exercise of judicial powers by such bodies. If no such basis be found, it matters not at all for present purposes that local bodies are not fettered by the separation-of-powers clause in the exercise of the powers which *have* been conferred upon them." (*Strumsky, supra,* at pp. 36-37, fns. omitted, original italics.)

By the same token, the separation-of-powers doctrine, while equally inapplicable to *prevent* the exercise of judicial powers by nongovernmental agencies, is irrelevant to the determination whether such powers *are possessed* by such agencies. It is clear, of course, that the agency whose decision we here consider has not been invested with judicial powers by the Constitution. Accordingly its adjudicatory decisions are subject to review under the same rules which are applicable to all decisions by administrative agencies lacking judicial powers. Those rules, which as we have pointed out are grounded in the nature of the right affected by the decision, include the rule of review announced in the *Bixby* and *Strumsky* cases.

We proceed to apply the *Bixby-Strumsky* rule to the instant case. ■ That rule, as stated by us in *Strumsky,* provides that if the subject order or decision "substantially affects a fundamental vested right, the court, in determining under section 1094.5 of the Code of Civil Procedure whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion *if the findings are not supported by the weight of the evidence.* If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in light of the whole record." (11 Cal.3d at pp. 44-45.) ■ The issue before us, then, in determining whether the trial court erroneously refused to

exercise its independent judgment on the evidence, is whether or not the administrative decision here in question "substantially affects a fundamental vested right."

We think it manifest—and indeed defendant has not contended otherwise—that the decision before us has a substantial effect on a right which is "fundamental." "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144.) As the court said in *Edwards* v. *Fresno Community Hosp.* (1974) 38 Cal.App.3d 702, 705 [113 Cal.Rptr. 579], "Although the term 'hospital privileges' connotes personal activity and personal rights may be incidentally involved in the exercise of these privileges, the essential nature of a qualified physician's right to use the facilities of a hospital is a property interest which directly relates to the pursuit of his livelihood." This interest is clearly fundamental within the meaning of *Bixby* and *Strumsky.*[20]

It is urged, however, that the right here affected, while fundamental in character, can by no means be considered vested. Reference is made to section 2392.5 of the Business and Professions Code (quoted in relevant part at fn. 1, *ante*), which provides in subdivision (a) that it is unprofessional conduct for a physician to practice at a hospital such as defendant unless medical staff appointments are made on an annual or biennial basis.[21] In view of this fact—and also presumably in view of the

[20]This conclusion is especially compelled in the circumstances of the instant case. According to the agreed statement of facts plaintiff has for a number of years maintained his office immediately across the street from the San Antonio Community Hospital in a building owned in part by him, and his home is located approximately one mile away. There is no other hospital in the City of Upland, and the nearest hospital of the size, quality, standing, and facilities of San Antonio Community Hospital is located in Pomona, approximately eight miles from plaintiff's office. There are smaller hospitals at Ontario and Montclair (where plaintiff presently enjoys temporary admitting privileges but has not been admitted to the medical staff)—at a distance of three and six miles respectively. In the City of San Bernardino, approximately 20 miles to the east, is another hospital comparable to San Antonio and Pomona.

The agreed statement of facts also asserts: "If not impossible, it is extremely difficult and a financial hardship for a physician to successfully practice general medicine without being admitted to a hospital medical staff. Additionally, many hospitals require general practitioners admitted to the staff to reside within a specified number of miles or a certain driving time in order to be available on call and, for this reason, Petitioner doubts whether he could qualify for medical staff membership as a general practitioner at hospitals located in Pomona or San Bernardino."

[21]A similar provision appears in the parallel statute governing the rules of public hospitals subject to the Local District Hospital Law. (Health & Saf. Code, § 32128.)

fact that staff appointments at defendant hospital are made on an *annual* basis—it is argued that the right to medical staff membership and associated privileges cannot be considered vested for more than the term of the appointment, and that upon expiration of the term the physician becomes comparable to an applicant for a license or franchise and wholly without a vested right to reappointment. (See *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 146, and cases there cited.)

This contention, we believe, wholly ignores the realities of the situation confronting us. Aside from the fact that plaintiff had been consistently appointed to defendant's medical staff for each of the 12 years preceding the events here in question, it is clear to us that the admission of a physician to medical staff membership establishes a relationship between physician and hospital which, although formally limited in duration by force of law, gives rise to rights and obligations which find no parallel in the license and franchise cases to which defendant has reference. An obvious distinction, of course, lies in the fact that the previously admitted physician, unlike the normal applicant for a license or franchise, may not be denied reappointment to the medical staff absent a hearing and other procedural prerequisites consistent with minimal due process protections. (See fn. 11, *ante,* and accompanying text.)[22] More significant for our present purposes, however, is the consideration that a hospital board, through its act of initially admitting a physician to medical staff membership, has thereby, in the exercise of its discretion, necessarily determined his fitness for such membership at the time of admission *and granted him the full rights of membership.*[23] The fact that review of this appointment is made mandatory on an annual or biennial basis (through a statutory requirement of reappointment at that interval, as determined by the hospital's bylaws) can by no means be said to render it probationary or tentative in effect. (Cf. *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818 [129 Cal.Rptr. 443, 548 P.2d 1115].) In short, the full rights of staff membership *vest* upon appointment, subject to divestment upon periodic

[22]As we have made clear in the cited footnote and text, this rule is equally applicable in the case of an initial application for medical staff membership and hospital privileges. We shall point out below, however, that certain other distinctions between the appointment and reappointment situations require a different result in the two cases on the question whether the interest affected by a decision is vested for purposes of the *Bixby-Strumsky* test.

[23]Compare *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 146: "Once the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for an independent judgment review of the facts underlying such administrative decision." (Fn. omitted.)

review only after a showing of adequate cause for such divestment in a proceeding consistent with minimal due process requirements. "Once having become a member of the hospital . . . staff [, the physician] had *a right to reappointment* until the governing authorities determined after a hearing conforming to the minimum requirements of procedural due process that he did not meet the reasonable standards of the hospital." (*Woodbury* v. *McKinnon* (5th Cir. 1971) 447 F.2d 839, 842; italics added.) (See also *Klinge* v. *Lutheran Charities Ass'n. of St. Louis* (8th Cir. 1975) 523 F.2d 56, 61.)

On the basis of the foregoing, we think it manifest that the right affected by the decision here in question is both fundamental and vested within the meaning of *Bixby* and *Strumsky*. It therefore appears that the trial court was in error when it refused to exercise its independent judgment on the evidence presented before the administrative body in order to determine whether the findings offered in support of the decision were supported by the weight of the evidence. This error requires that we reverse the judgment and remand the cause to the trial court for further proceedings under the proper standard of review.[24]

### III

■ Plaintiff's remaining contentions all relate to the requirement—foreshadowed in *Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d 541, and explicitly articulated in *Ascherman* v. *Saint Francis Memorial Hosp., supra,* 45 Cal.App.3d 507, 511—that membership decisions of hospital staff associations, whether in public or private hospitals, "must be rendered pursuant to minimal requisites of fair procedure required by established common law principles." (*Ascherman, supra.*) For reasons which appear below, we conclude that none of the points advanced has merit.

---

[24]Because significant portions of the administrative proceedings here subject to review took place before a panel of medical doctors exercising professional judgment on matters of proper medical technique and practice, the trial court may find the record of those proceedings inadequate for the purpose of informed judicial review. If so the trial court, prior to undertaking its deliberations, may wish to remand the matter to the administrative body for further proceedings directed to the preparation of an adequate record. (See *Keeler* v. *Superior Court* (1956) 46 Cal.2d 596, 600 [297 P.2d 967]; *Aluisi* v. *County of Fresno* (1958) 159 Cal.App.2d 823, 825-826 [324 P.2d 920]; cf. *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12]; see generally Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 13.20, pp. 230-231.)

### A

■ It is urged that the hearing before defendant's judicial review committee should have been conducted pursuant to the 1968 bylaws rather than the 1974 bylaws (see fns. 4 & 5, *ante,* and accompanying text). It appears, however, that the effective date of the revised bylaws was February 25, 1974, and that the hearing did not commence until March 5. Although plaintiff sets forth four instances in which provisions in the 1968 bylaws would allegedly have operated in his favor, each of these changes was procedural and remedial in character and purpose, and were therefore properly applicable to the pending hearing. (See *Angeli* v. *Lischetti* (1962) 58 Cal.2d 474, 478 [24 Cal.Rptr. 845, 374 P.2d 813].) In any event, plaintiff has failed to demonstrate how any of the subject amendments resulted in prejudice to him.[25]

### B

■ It is urged that "minimal due process" required some participation by plaintiff in the selection of the judicial review committee, and that three of the five members of the committee were prejudiced against him. It does not appear, however, that plaintiff raised the matter of prejudice before the committee; indeed, he did not even raise it when, represented by counsel, he appeared before the board of directors at the appellate review hearing. His assertion that he was not entitled to do so under the bylaws is substantially refuted, in our view, by the provisions therein stating that appointees to the committee "shall not have actively participated in the consideration of the matter involved at any previous

---

[25]The 1968 bylaws provided that in hearings requested because of a "failure to reappoint" the candidate had "the burden of proving, by clear and convincing evidence, that the recommendation of the Advisory Committee was unreasonable or erroneous." The 1974 bylaws extended this burden to "all cases in which a hearing is conducted under this Article." The primary issue here was failure of reappointment.

The 1968 bylaws required that the notice of hearing in cases of this nature set forth "a concise statement of the acts or omissions" with which the physician was charged. The revised bylaws provide that the notice state in writing "the acts or omissions with which the Medical Staff member is charged, a list of charges by chart number under question, or the reasons for the denial of the request of the applicant or Medical Staff member." The notice received by plaintiff, as indicated above (see text accompanying fn. 3, *ante*), set forth both the reasons for the action taken and a list of applicable chart numbers.

Review procedures under the 1968 bylaws included an appeal to a plebiscite of the entire active medical staff; the revised bylaws included no such provision but instead relied on a formal appellate procedure. No prejudice appears.

Although the revised bylaws deleted "knowledge of the matter involved" as a basis for disqualification of judicial review committee appointees, plaintiff has failed to demonstrate that any member of the committee had such knowledge. The deletion of such a requirement is reasonable in the circumstances.

level" and that the grounds for appeal shall include any failure to comply with relevant bylaws "so as to deny due process and a fair hearing."

## C

■ Plaintiff further contends that it was fundamentally unfair to require him to proceed with the hearing before the judicial review committee without the assistance of counsel. The revised bylaws, as they related to this issue, provided in substance that, because the hearing provided for was "for the purpose of interprofessional resolution of matters bearing on conduct or professional competency . . . neither the person requesting the hearing, the Executive Committee, nor the Board of Trustees shall be represented in any phase of the hearing or appeals procedure by an attorney at law unless the Judicial Review Committee, in its discretion, permits both sides to be represented by legal counsel" —and that in lieu of such permission the affected physician was to be represented by another physician (preferably a member of the medical staff) and the charging committee of the staff by two other staff members.[26] It appears that at no time prior to the hearing before the judicial review committee did plaintiff request to be allowed to appear with counsel at the proceedings. At the hearing itself—at the conclusion of the first of the two days of hearing—a request to be allowed representation was made in what must be deemed at best an equivocal manner, and the request was denied as untimely made. Plaintiff was represented by counsel of his own choice at the appellate hearing before the board of directors. In view of the foregoing it must be concluded that plaintiff, having failed to make a timely request for counsel before the judicial review committee, may not now be heard to maintain that he should have been permitted to appear with counsel at the hearing.

In any event, we find that the rule here in question—rendering representation by counsel a matter within the discretion of the judicial review committee—is not offensive to the standard of "minimal due process" which is applicable in proceedings of this kind. (See *Ascherman* v. *San Francisco Medical Society, supra,* 39 Cal.App.3d 623, 648; *Silver* v. *Castle Memorial Hospital* (1972) 53 Hawaii 475, 485 [497 P.2d 564].)

[26]Defendant's revised bylaws are essentially identical in this respect to both the JCAH model bylaws and the CMA-CHA Uniform Code, the only significant difference being that the latter two formulations provide for a single staff member to represent the charging committee while defendant's version provides for two. (See JCAH, Guidelines for the Formulation of Medical Staff Bylaws, Rules and Regulations, *supra,* pp. 25-26; CMA, Guiding Principles for Physician-Hospital Relationships, *supra,* p. 11; see generally, text accompanying and following fn. 18, *ante.*)

## D

█ Finally it is urged by plaintiff that a hospital bylaw placing the burden of going forward with the evidence and the burden of proof upon him is inconsistent with the requirement of minimal fair procedure set forth in *Pinsker* and *Ascherman.* The bylaw in question provides in relevant part: "At any hearing involving any of the grounds for hearing specified [which include denial of reappointment and suspension of membership] . . . it shall be incumbent on the person who requested the hearing to initially come forward with evidence in support of his position. . . . [¶] In all cases in which a hearing is conducted under this Article, after all evidence has been submitted by both sides, the Judicial Review Committee shall rule against the person who requested the hearing unless it finds that said person has proved, by clear and convincing proof, that the action of the committee or body whose decision prompted the hearing was arbitrary, unreasonable, or not sustained by the evidence."[27]

█ We reject at the outset the contention, advanced by defendant, that plaintiff is precluded from challenging this bylaw by the doctrine of exhaustion of administrative remedies. (See *Holderby* v. *Internat. Union etc. Engrs.* (1955) 45 Cal.2d 843, 846-847 [291 P.2d 463]; *Martino* v. *Concord Community Hosp. Dist., supra,* 233 Cal.App.2d 51, 57; cf. *Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d 465, 474-478.) Although it is true that plaintiff raised the issue for the first time in his petition for writ of mandate directed to the superior court, we conclude that he lacked any appropriate opportunity to do so at an earlier stage. In the intermediate proceedings before the judicial review committee plaintiff was not represented by counsel and moreover the rules governing the hearing provided no realistic avenue for a challenge to the fundamental fairness of those rules. The appellate proceedings before the board of directors, in which plaintiff did have the assistance of counsel, were governed as to scope by a bylaw, set forth at footnote 6, *ante,* which limited the grounds for appeal to (1) substantial failure of the

---

[27]The bylaw in question is identical to that suggested in the CMA-CHA Uniform Code of Hearing and Appeal Procedures. (See CMA, Guiding Principles for Physician-Hospital Relationships, *supra,* p. 13.) The parallel provision suggested in the JCAH model bylaws places the burden of going forward with the evidence on the representative of the charging committee or governing board but goes on to provide that "the affected practitioner shall thereafter be responsible for supporting his challenge to the adverse recommendation or decision by an appropriate showing that the charges or grounds involved lack any factual basis or that such basis or any action based thereon is either arbitrary, unreasonable or capricious." (JCAH, Guidelines for the Formulation of Medical Staff Bylaws, Rules and Regulations, *supra,* p. 25.)

committee *to comply with the bylaws* "so as to deny due process and a fair hearing," and (2) lack of substantial evidence to support the committee's decision. It is clear, we think, that this limitation precluded an attack on the *validity* of the subject bylaw. We find nothing to suggest that the board of directors had authority to invalidate bylaws in the context of an appellate proceeding before it. Accordingly, the doctrine of exhaustion of administrative remedies cannot be held to bar a present consideration of the validity of the bylaw here before us. ■■■ " 'The rule that a party must exhaust his administrative remedies prior to seeking relief in the courts "has no application in a situation where an administrative remedy is unavailable or inadequate." (*Martino* v. *Concord Community Hospital Dist.* (1965) 233 Cal.App.2d 51, 56 . . . .)' (*Diaz* v. *Quitoriano,* 268 Cal.App.2d 807, 812 . . . .)" (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 691, fn. omitted [94 Cal.Rptr. 421, 484 P.2d 93].)

■■■ We hold, however, that the bylaw in question is not violative of the applicable standard. "The common law requirement of a fair procedure does not compel formal proceedings with all the embellishments of a court trial . . . nor adherence to a single mode of process. It may be satisfied by any one of a variety of procedures which afford a fair opportunity for an [affected party] to present his position. As such, this court should not attempt to fix a rigid procedure that must invariably be observed. Instead, the associations themselves should retain the initial and primary responsibility for devising a method which provides an [affected party] adequate notice of the 'charges' against him and a reasonable opportunity to respond. In drafting such procedure . . . the organization should consider the nature of the tendered issue and should fashion its procedure to insure a *fair* opportunity for an [affected party] to present his position. Although the association retains discretion in formalizing such procedures, the courts remain available to afford relief in the event of the abuse of such discretion." (*Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d 541, 555-556, fn. omitted.)

We cannot conclude that the adoption and application of the bylaw here in question constitutes an abuse of the indicated discretion. Although it appears to place the initiative with respect to the production of evidence upon the party requesting the hearing in light of an adverse administrative recommendation, and although it further appears to require that the recommendation be sustained absent a "clear and convincing" showing by that party that it should be overturned, it is clear that the bylaw read as a whole—especially when viewed in conjunction with the provision setting forth the grounds for appellate review before the governing board (see fn. 6, *ante*)—contemplates a substantial

showing on the part of the charging committee in support of its recommendation.[28] It is also clear that the procedure here in question provides adequate notice of charges and a "fair opportunity [for the affected party] to present his position." Our *Pinsker* decision requires no more than this. (See also *McTaggart* v. *Secretary of Air Force* (7th Cir. 1972) 458 F.2d 1320, 1322-1323, fn. 4.)

## IV

We summarize our conclusions: Although this matter was brought as a proceeding in "traditional mandate" pursuant to section 1085 of the Code of Civil Procedure, the trial court properly treated it as a proceeding in "administrative mandate" under section 1094.5 of the same code. However, in reviewing the administrative record in order to determine whether an abuse of discretion had occurred, it erroneously concluded that the principles announced in our *Bixby* and *Strumsky* decisions were inapplicable to the case before it. Because the decision below substantially affects a fundamental vested right of the plaintiff, it was incumbent upon the trial court, in determining whether an abuse of discretion had occurred, to exercise its independent judgment in order to determine whether the findings of the administrative body were supported by the weight of the evidence. Because it failed to do so, the judgment must be reversed and remanded for further proceedings. We further hold, however, that the proceedings at the administrative level were conducted in a manner consistent with the minimal requisites of fair procedure demanded by established common law principles.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Tobriner, Acting C. J., Mosk, J., Richardson, J., and Wright, J.,* concurred.

---

[28]Thus the bylaw in question, by indicating that the judicial review committee shall rule against the affected person absent a clear and convincing showing on his part that the recommendation of the charging committee "was arbitrary, unreasonable *or not sustained by the evidence*," strongly implies that substantial evidence in support of the recommendation must appear. The provision dealing with grounds for appeal strongly reinforces this implication by establishing as one of the grounds "that the decision . . . was not supported by substantial evidence." It is thus apparent that a decision unsupported by evidence viewed by the governing board as substantial—i.e., a decision based wholly upon the burdens of production and proof—is not contemplated by the bylaws.

*Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

**CLARK, J.,** Dissenting.—The instant case demonstrates the need to rethink California's unique rule requiring trial de novo review of administrative determinations. The rule frequently defeats the beneficial purposes of administrative adjudication—appropriate expertise, economical and speedy determination, and recognition of institutional policy. Further, the constitutional theory advanced for the trial de novo rule is erroneous. Finally, having been rejected by other jurisdictions, the rule should be reconsidered, allowing the Legislature to establish a process with greater deference to administrative determination.

## THE TRIAL DE NOVO RULE

If the decision of an administrative agency affects a "fundamental vested right," the trial de novo rule requires the trial court to exercise its independent judgment by *reweighing the evidence* to determine whether the administrative findings are unsupported by the evidence.[1] (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44 [112 Cal.Rptr. 805, 520 P.2d 29].) If the agency's decision has not affected a fundamental vested right, the trial court's inquiry is limited to the customary test of determining whether the findings are unsupported by *substantial evidence* in light of the whole record. (*Id.* at pp. 44-45.)

## PURPOSES OF ADMINISTRATIVE TRIBUNALS

The beneficial purposes of administrative adjudication include special expertise, simplified procedure permitting economical and speedy determination, and the tribunal's superior ability—due to staffing, tradition, and procedure—to operate as a policy-making body implementing legislative will. (Jaffe, Judicial Control of Administrative Action (1965) pp. 25-26.) However, as illustrated by the instant case, these purposes are substantially frustrated by the trial de novo rule.

### Expertise

The charges present questions involving a high degree of medical expertise. Timely completion of patient histories and physical examinations are factual questions laymen and judges might be competent to determine. However, questions whether plaintiff visited hospitalized

---

[1]Earlier cases appear to have created a presumption in favor of the correctness of the administrative agency's findings. (E.g., *Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790, 800 [136 P.2d 304].) Such a presumption, while perhaps desirable, appears inconsistent with the concept of independent judgment. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 154, fn. 12 [93 Cal.Rptr. 234, 481 P.2d 242] (Burke, J., conc. & dis.).)

patients on a timely basis, or overutilized facilities, involve not only the issues of when patients were visited and what practices were used but also require application of appropriate medical standards.

Institutional competency requires that questions of medical judgment lie with the medical staff and the hospital administration. They—rather than judges—are trained to make these judgments. The statement of the majority (*ante*, p. 825, fn. 24) that the trial judge might remand the matter for further proceedings to create a record more fully reflecting doctors' views of proper medical techniques and practices admits the problem. A judge's cram course in medicine is a poor substitute for the professional judgment of the highly educated practitioners in the field.

*Economical and Speedy Determination*

The inefficiency of the trial de novo process is illustrated by the possibility that repeated remands to the medical staff with attendant delays and expense may be necessary to educate the judge as to simple medical matters—matters obvious to all medical practitioners but not to untrained persons. For example, the record herein has references to patient blood pressure, and while all members of the medical staff would immediately recognize whether the figures were a matter of concern, a trial judge looking at the same data might have to remand to learn their medical significance. Because the meaning of such test results is so clear to the medical staff and the petitioning doctor, they may often fail to make a record as to their medical importance, but the judge must be educated to simple matters before he undertakes to make the complex medical determination whether the patient's condition warranted continued confinement in the hospital or whether such confinement constituted overutilization.

In addition, the trial de novo rule is inherently inefficient. The proper approach to adjudicate conflicting claims is to first determine the facts, next the legal principles applicable to those facts, and finally the consequences flowing from the facts and the legal principles. While the agency initially determines the facts, the trial judge under the trial de novo rule must redetermine them, and in cases of variance between the determinations, the agency must then fix the consequences. For example, in the instant case, after several possible remands to obtain further evidence concerning the meaning of medical tests, and the proper medical techniques and practices, the court may reject some but not all of the expert views of the medical staff in favor of plaintiff's conflicting testimony as to standards of proper utilization. When the court modifies

the agency's findings in this manner, it must again remand to the agency to redetermine the appropriate penalty, if any.

*Institutional Policy*

The most glaring failure of the trial de novo rule is that it may result in trial judges rather than designated officials determining the institution's policy. The hospital administration and medical staff should run the hospital. Judges are not trained to do so. Yet when he decides what constitutes proper utilization or how often a doctor should visit his hospitalized patient, the trial judge determines questions of policy and undertakes operating the hospital in a real sense.

*Substantial Evidence Rule*

In contrast to the trial de novo rule, the traditional substantial evidence rule requires deference to administrative expertise, reduces expense and delay stemming from trial court processing, and permits administrators to exercise more fully the institutional discretion vested in them. The administrator's action is reviewable only for clear abuse of that discretion. (See, 5 Witkin, Cal. Procedure (1971) pp. 3974-3975; 3977-3980.)

### CONSTITUTIONAL BASIS

The constitutional basis asserted for the trial de novo rule is article VI, section 1 of our state Constitution, vesting judicial power in the courts.[2] It is claimed that in absence of constitutional provision vesting judicial power in an agency, it possesses none, and that administrative adjudication affecting vested and fundamental rights constitutes improper exercise of judicial power. (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 35-45.)

The fallacies in the argument have been well expressed by Chief Justice Gibson, Justice Traynor, and Justice Burke in their scholarly concurring or dissenting opinions in *Laisne* v. *Cal. St. Bd. of Optometry*

---

[2]Article VI, section 1, of our Constitution provides: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts. All except justice courts are courts of record."

Although *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 35, also mentioned the separation of powers clause (Cal. Const., art. III, § 3), the court recognized that the clause did not apply to local agencies. (11 Cal.3d at p. 36.) Since *Strumsky* held that the trial de novo rule applied to local agencies, it is apparent that the rule is presently based on article VI, section 1.

(1942) 19 Cal.2d 831 [123 P.2d 457], *Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790 [136 P.2d 304], *Moran* v. *Bd. of Medical Examiners* (1948) 32 Cal.2d 301 [196 P.2d 20], *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], and *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28. Additionally, numerous commentators have criticized the rule. (See authorities cited *Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 739-740 [129 Cal.Rptr. 298, 548 P.2d 698] (dis. opn.).) For example, Professor Davis refers to the *Strumsky* decision extending the trial de novo rule to local agencies as an erratic movement "back into medievalism." (Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise (1976) pp. 8-9.) The fallacies in the asserted constitutional basis for the trial de novo rule need not be repeated here. Interestingly, while every state vests judicial power in the courts, none has felt compelled to adopt California's trial de novo rule.

Finally, attention must be called to an inherent inconsistency in today's majority opinion. We are told on the one hand that plaintiff's rights are of such importance that decisions affecting them necessarily involve an exercise of the judicial power (*ante,* p. 820) and, on the other, that it is entirely proper to exclude attorneys from the presentation of evidence in this judicial proceeding (*ante,* p. 827). The majority in effect forces the physician to practice law. The majority may not have it both ways—either the proceeding is an exercise of judicial power or it is not.

The petition of the respondents for a rehearing was denied November 3, 1977. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.