[No. B202144. Second Dist., Div. Six. Aug. 18, 2008.]

SOHAIL NASIM, Plaintiff and Respondent, v.
LOS ROBLES REGIONAL MEDICAL CENTER, Defendant and Appellant.

COUNSEL

Theodora, Oringher, Miller & Richman, Todd Theodora, Arthur R. Chenen and David E. Mead for Defendant and Appellant.

Curtis Green & Furman, Curtis & Green, Thomas B. Curtis and Abbie P. Maliniak for Plaintiff and Respondent.

OPINION

**GILBERT, P. J.**—A doctor loses his hospital privileges because he did not comply with a hospital rule. Because the rule was applied retroactively, it was impossible for the doctor to comply. We conclude the doctor was denied a vested right.

Defendant Los Robles Regional Medical Center (Hospital) appeals a judgment that granted a writ of mandate and overturned the Hospital's administrative decision. The Hospital's appeal board ruled that plaintiff, Dr. Sohail Nasim, could not continue to exercise privileges in nephrology at the Hospital. We conclude that the trial court properly found that retroactive application of the rule was unreasonable and interfered with Nasim's vested right to maintain his privileges. We affirm.

## FACTS

In 2001, after completing his medical training in nephrology at the University of California, Los Angeles (UCLA), Nasim applied for medical staff membership in the Hospital's Department of Internal Medicine. The Hospital approved his application and Nasim joined the provisional medical staff with physician privileges in internal medicine and nephrology.

In June of 2002, the Hospital's credentials committee determined that Nasim continued to meet the Hospital's requirements, but had not obtained board certifications in specialty areas. The Hospital rules did not require staff doctors to obtain board certifications within any specified time periods. The credentials committee suggested that the matter be referred to the bylaws committee for a change in the rules.

In July of 2002, the Hospital's nephrology committee reviewed cases of Nasim and the other nephrologists on staff. It found all of the cases were managed appropriately.

On March 27, 2003, the Hospital notified Nasim: "[T]he Department of Internal Medicine recently revised its membership requirement rules concerning board certification. The rules now require that: [¶] . . . [¶] If not board certified, certification in Internal Medicine must be achieved within the two year provisional period, or membership will not be renewed. [¶] Applicants for sub-specialty privileges [nephrology] must be Board Certified in Internal Medicine. [¶] Sub-specialty certification must be achieved within two consecutive sub-specialty board exams after completing a sub-specialty training program, or privileges for the sub-specialty will not be renewed. [¶] These requirements will pertain to you. Our search of the American Board of Internal Medicine's records shows that you have not yet been certified in internal medicine. As your provisional membership expires in December of 2003, non-certification will affect your membership." (Underscoring omitted.)

Nasim wished to retain his privileges in nephrology. But because he was not board certified in internal medicine, he could not register to take the nephrology board examination at that time. The earliest available nephrology test for him was in November of 2004. But that was beyond the Hospital's deadline.

In August of 2003, Nasim became board certified in internal medicine. On December 15, 2003, he was appointed to the Hospital's "active" staff for two months subject to a pending peer review.

On March 8, 2004, the Hospital advised him that his privileges to practice there would be terminated in April of 2004. It said: "You are not certified by the Subspecialty Board on Nephrology of the American Board of Internal Medicine . . . . Department of Internal Medicine Rule IV required you to achieve subspecialty in nephrology within two consecutive subspecialty board exams after you completed your nephrology training program. You completed your training program on June 30, 2001."

Nasim requested a hearing. The Hospital claimed his privileges in internal medicine should be terminated because he committed malpractice and was unqualified. The hearing committee found no grounds to terminate those privileges and that he should "be granted membership and privileges in internal medicine . . . ." But it said his privileges in nephrology had to be terminated because of rule IV of the Department of Internal Medicine (Rule IV).

In 2005, Nasim became board certified in nephrology. The certification is valid to 2015.

Nasim appealed the hearing committee's decision to the Hospital's appeal board. He claimed that doctors in the Hospital's nephrology department

wanted to remove him because he had opened a private practice in nephrology. In his administrative appeal brief, he said the new rule was applied to him merely "to eliminate a competitor." The board upheld the revocation of his privileges in nephrology based on Rule IV.

Nasim filed a petition for writ of mandate (Code Civ. Proc., §§ 1085, 1094.5) and requested restoration of his privileges in nephrology. The trial court granted the writ. It found that Nasim acquired a vested property interest in his nephrology privileges and the modified Rule IV "retroactively changed the substantive requirements . . . in a way that impermissibly divested him of a vested property right without due process . . . ." The court said: "[T]he heart of this case . . . is the unfairness of changing the rule midstream, telling a person a new rule and then as a calendar matter it's impossible to complete it." Nasim was "deprived of an important economic relationship with no opportunity prospectively provided to jump through the right hoops." The court issued a peremptory writ of mandate ordering the Hospital to reinstate Nasim's clinical privileges in nephrology. It also ruled: "Nothing in this judgment . . . shall limit or control in any way the discretion legally vested in [the Hospital] with respect to the medical staff membership or clinical privileges of [Nasim]."

### Application of New Rule to Nasim

■ A doctor who has been granted hospital privileges has a vested " 'property interest which directly relates to the pursuit of his [or her] livelihood.' " (*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 823 [140 Cal.Rptr. 442, 567 P.2d 1162].) "[T]he full rights of staff membership *vest* upon appointment, subject to divestment upon periodic review only after a showing of adequate cause . . . in a proceeding consistent with minimal due process requirements." (*Id.* at pp. 824–825.) "[A] hospital board, through its act of initially admitting a physician to medical staff membership, has thereby, in the exercise of its discretion, necessarily determined his [or her] fitness for such membership at the time of admission . . . ." (*Id.* at p. 824.) It may not arbitrarily or unreasonably terminate a doctor's privileges. (*Ascherman v. San Francisco Medical Society* (1974) 39 Cal.App.3d 623, 646 [114 Cal.Rptr. 681].)

In a mandamus review of a board decision, the trial court exercises its independent judgment on the evidence in the administrative record. (*Anton v. San Antonio Community Hospital, supra*, 19 Cal.3d at p. 825.) On appeal, we determine whether substantial evidence supports the judgment. If the judgment is correct, we may affirm on any valid ground, even one not relied on by the trial court. (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 610 [92 Cal.Rptr.2d 897].)

■ Nasim does not dispute a hospital's authority to make rules. He claims, however, that the trial court could reasonably find that the retroactive application of modified Rule IV to him was unreasonable. We agree. Retroactive rule changes that impair vested rights are disfavored. (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 906 [52 Cal.Rptr.2d 491]; *Lix v. Edwards* (1978) 82 Cal.App.3d 573, 580–581 [147 Cal.Rptr. 294]; see also *Yap v. Zollar* (1997) 294 Ill.App.3d 71, 80 [229 Ill.Dec. 82, 691 N.E.2d 18, 25] [retroactive changes in medical certification requirements were invalid].) Employment rules that impose impossible conditions contravene public policy. (Lab. Code, § 2856; *Cerberonics, Inc. v. Unemployment Ins. Appeals Bd.* (1984) 152 Cal.App.3d 172, 176 [199 Cal.Rptr. 292].) Hospitals may set qualifications for their staffs. But they "may not adopt rules for . . . revocation of staff membership which permit action on an arbitrary . . . basis" (*Miller v. National Medical Hospital* (1981) 124 Cal.App.3d 81, 93 [177 Cal.Rptr. 119]), or apply neutral rules in a way that unreasonably interferes with vested privileges. (*Redding v. St. Francis Medical Center* (1989) 208 Cal.App.3d 98, 103 [255 Cal.Rptr. 806]; *Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550 [116 Cal.Rptr. 245, 526 P.2d 253].)

Here the rule was enacted after Nasim had been granted hospital privileges. On its face, the rule appears neutral. It requires subspecialty certifications to be completed within two consecutive board examinations from the completion of the doctor's training in that specialty.

But the retroactive application of the new rule to Nasim made it impossible for him to comply. He completed his nephrology training in 2001. When the Hospital granted his privileges, there was no requirement that he had to become board certified in nephrology within any time limit. The Hospital told him that as a member of the medical staff he would be reappointed every two years.

But in March 2003, he was notified that, because of the rule change, he had to be board certified within two years of the completion of his 2001 training. By that time, however, it was too late for him to comply with this new requirement. He could not schedule the nephrology examination until 2004. He was not given timely notice, but his privileges were nevertheless terminated because the Hospital retroactively applied the rule. The trial court found that the Hospital applied the rule so as to make compliance "impossible." The March 27 letter ostensibly gave notice about timely compliance with the new standards. But for Nasim, it was a termination notice.

The Hospital contends the trial court lacks authority to undermine hospital rules. But the court did not invalidate this rule. It found its application to Nasim was unreasonable and arbitrary. "[A]n organization's decision to expel

or exclude an individual may be arbitrary either because the reason underlying the rejection is irrational or because the organization has proceeded in an unfair manner." (*Pinsker v. Pacific Coast Society of Orthodontists, supra*, 12 Cal.3d at p. 550.) The trial court noted that had the Hospital applied the rule prospectively with timely notice and a reasonable opportunity to comply, the result would be different. (*Major v. Memorial Hospitals Assn.* (1999) 71 Cal.App.4th 1380, 1398 [84 Cal.Rptr.2d 510].)

The Hospital claims there is no showing that Nasim was treated unfairly or arbitrarily by its application of Rule IV. But the rule was not applied uniformly. Staff doctors were exempt from the board certification requirements. The Hospital's reason for this exemption was: "*New applicants'* qualifications are unknown, while existing staff have a track record and have been subject to monitoring . . . ." (Italics added.)

But Nasim was not a new applicant. He was a doctor in the provisional staff who had been subject to monitoring. The nephrology committee determined his cases had been appropriately managed. Although the stated purpose of the rule involved new applicants, the Hospital applied it "to existing provisional staff members," but not active staff members. Nasim claims the Hospital made this distinction between staff doctors to target him. The Hospital contends it is entitled to substantial deference in making a new rule. That is the case "if it is one of general application intended to address an administrative problem as a whole *and not directed at specific individuals.*" (*Major v. Memorial Hospitals Assn., supra*, 71 Cal.App.4th at p. 1398, italics added.) Here, the credentials committee, which urged the modification of the rule, discussed only one physician, Nasim. In the mandamus action, the Hospital admitted that "Dr. Nasim was the 'impetus' for this new rule."

The trial court could find that the distinction the Hospital made between provisional and active staff might be appropriate if the rule had been applied prospectively. But it became artificial when applied retroactively to Nasim in 2003 and thereafter. Nasim became an active staff member and board certified in internal medicine. However, the Hospital never applied the rule's active staff exemption to him. When he became board certified in nephrology, it continued to object to the reinstatement of his nephrology privileges. Yet, other staff doctors who were exempted from the rule, and not board certified, are allowed to practice that specialty. The Hospital tried to terminate his privileges in internal medicine, but the hearing committee found this attempt to be unwarranted and unreasonable.

The Hospital suggests the judgment impedes its authority to remove doctors whose performance is below reasonable medical standards or who provide inadequate care. But that is not the case. The trial court properly

ruled that the judgment did not limit or control in any way the discretion legally vested in the Hospital in this regard. (*Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 661 [163 Cal.Rptr. 831].) It found only that the way in which the Hospital applied the rule to Nasim was unreasonable.

We have reviewed the Hospital's remaining contentions and conclude they are without merit.

The judgment is affirmed. Costs on appeal are awarded in favor of respondent.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied September 11, 2008, and appellant's petition for review by the Supreme Court was denied November 12, 2008, S167041.